# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

IJL MIDWEST MILWAUKEE, LLC, and
SARA DARLING,

     Plaintiffs,

v.

IT'S JUST LUNCH INTERNATIONAL,
LLC,

     Defendant.

And all related counterclaims.

Case No.: 2:19-cv-01006-APG-EJY

**Order Granting in Part Defendant's
Motion for Summary Judgment**

[ECF No. 52]

     Plaintiff-franchisee Sara Darling and defendant-franchisor It's Just Lunch International, LLC (IJL) engaged in several franchise agreements by which Darling operates dating service franchises across the country.  Plaintiff IJL Midwest Milwaukee, LLC (Milwaukee) is one such franchise.  Amid a revenue and royalty dispute, IJL did not respond to Darling's franchise-renewal request for Milwaukee.  Darling and Milwaukee now sue IJL for contractual breaches and interference, and violations of multiple state franchise statutes.  IJL counterclaims for contractual breaches.  Both sides seek declaratory relief.  IJL also filed a so-called third-party complaint[1] asserting the allegations from its counterclaim against Darling's other franchise

---

[1] Under Federal Rule of Civil Procedure (FRCP) 14, a defendant may serve "a third-party complaint upon a person not a party to the action who is or may be liable to the original defendant for all or part of the plaintiff's claim." *United States v. One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538*, 708 F.2d 444, 452 (9th Cir. 1983) (simplified).  Thus, "a third-party claim may be asserted only when . . . the third party's liability is secondary or derivative" to the liability of the original defendant. *Id.*  IJL's third-party complaint against Darling's remaining franchises does not seek indemnification for the plaintiffs' original claims.  As a result, IJL's third-party complaint is improper.  I have no reason to believe that joinder of these franchises under FRCP 19 or 20 would have been improper, and the parties do not dispute this procedural defect.  So, in the interest of efficiency, I will treat the so-called third-party defendants as joined

locations. These franchisees in turn assert claims against IJL, largely mimicking the plaintiffs' original claims.[2] IJL moves for summary judgment on all claims.

I grant in part IJL's motion for summary judgment. The parties do not dispute that the franchisees owe IJL $278,117.00 for its breach of contract counterclaim. Any amount owed in excess of that is genuinely disputed. The franchisees' claim for tortious interference is unripe. The parties genuinely dispute material facts about the remaining claims and counterclaims for declaratory judgment and breach of the implied covenant, as well as the franchisees' claims for breach of contract, violation of the Minnesota Franchise Act (MFA), violation of the Wisconsin Fair Dealership Law (WFDL), and violation of the Illinois Franchise Disclosure Act (IFDA). Consequently, I also deny summary judgment on whether injunctive relief is appropriate.

## I.    **BACKGROUND**

IJL is the franchisor of a nation-wide dating and match-making service. ECF Nos. 52 at 4; 53 at 5. Darling operates six IJL franchises in Minneapolis, Milwaukee, Chicago, Denver, Cleveland, and Washington, D.C. ECF Nos. 52 at 4-5; 53 at 5; 53-8 at 2. In August 2018, IJL sent notices of default to each of the six franchisees, explaining in relevant part that they "failed to provide IJL . . . with [their] [f]inancial [r]eports" required in their franchise agreements. ECF No. 52-2 at 224, 229, 233, 237, 241, 245.[3] The franchisees provided the requested reports to IJL,

---

plaintiffs, their claims as brought in the first instance, and IJL's claims against them as counterclaims.

[2] The newly implicated franchisees allege: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the Illinois Franchise Disclosure Act; and (4) violation of the Minnesota Franchise Act. They also seek declaratory judgment.

[3] I advise the parties to comply with Local Rules IA 10-3 and IC 2-2(a)(3) in the future. Exhibits must be separately filed. I further advise the parties that "[d]ocuments filed electronically must be filed in a searchable" format. Local Rule IA 10-1.

and IJL determined that the franchisees had underreported gross revenue, resulting in deficient royalty and fee payments. ECF No. 52-3 at 11.

While IJL engaged in a royalty investigation, Darling wrote to IJL on behalf of the Milwaukee franchise, requesting a renewal of its franchise agreement. ECF No. 52-4 at 166.  IJL did not respond with renewal paperwork as requested. ECF Nos. 1-1 at 4; 36 at 3.  In the wake of IJL's refusal to send the paperwork for the Milwaukee location, Darling and Milwaukee filed this lawsuit. ECF No. 1-1.

Darling and all six franchisees (collectively, "franchisees") sue IJL for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violations of the MFA, WFDL, and IFDA; (4) tortious interference; (5) declaratory judgment; and (6) injunctive relief. ECF Nos. 1-1; 46.  IJL counterclaims, alleging breach of contract and breach of the implied covenant of good faith and fair dealing, and seeking declaratory judgment. ECF No. 36.

IJL now moves for summary judgment, arguing that: (1) the franchisees concede that they breached their contracts by making deficient royalty and fee payments; (2) I should decide the deficiency amount as a matter of law because the contractual language on revenue and royalty calculations is unambiguous; (3) I should declare that IJL may terminate or non-renew the franchisees' agreements without providing an opportunity to cure because, as a matter of law, the franchisees' breaches are incurable; (4) the franchisees' claims for breach and statutory violations fail because IJL has yet to terminate or non-renew any of their franchise agreements; and (5) the franchisees' remaining claims for tortious interference, declaratory relief, and injunctive relief are either moot or unripe.  The franchisees respond that: (1) their royalty calculation is correct; (2) the royalty dispute does not constitute an incurable breach; (3) their claims should remain pending because IJL intends to terminate or non-renew their agreements

without providing an opportunity to cure; and (4) IJL already violated statutory notice requirements.

II.   **ANALYSIS**

Summary judgment is proper where a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The moving party bears the initial burden of informing the court of the basis of its motion and the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the moving party can meet its initial burden by "pointing out through argument . . . the absence of evidence to support plaintiff's claim").

Once the moving party carries its burden, the nonmoving party must "make a showing sufficient to establish the existence of [the disputed] element to that party's case." *Celotex*, 477 U.S. at 322.  I need not "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Instead, I "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*  I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

/ / / /

4

**A.      IJL's Breach of Contract Counterclaim**

IJL argues that the franchisees breached their franchise agreements by failing to pay IJL $1,111,871.00 in royalties and fees.[4]  The franchisees admit they underpaid IJL, but they contend they owe only $278,117.00.

Under Nevada law, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1145 (D. Nev. 2017) (quotation omitted).  "[I]n the absence of ambiguity or other factual complexities," contract interpretation "present[s a] question[] of law for the courts [that is] suitable for determination by summary judgment." *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990).  "Contract interpretation strives to discern and give effect to the parties' intended meaning." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 367 (Nev. 2013).  A contract is ambiguous if it "is subject to more than one reasonable interpretation." *Anuvi, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007).  Where a contract is ambiguous, summary judgment is inappropriate. *Mullis v. Nevada Nat. Bank*, 654 P.2d 533, 536 (Nev. 1982).

The parties genuinely dispute the amount of royalties owed based on differing interpretations of the franchise agreements' definition of gross revenue. ECF Nos. 52 at 13; 53 at 19; 52-4 at 105, 156.  In relevant part, the agreements define gross revenue as "all revenues from sales conducted upon or from the [business], and shall include, but not be limited to, the amounts received from the sale of services and products of every kind and nature." ECF No. 52-1 at 20. This definition is susceptible to more than one reasonable interpretation because it is unclear

---

[4] This amount also incorporates prejudgment interest.

whether the terms "revenue" and "received" contemplate refunds, cancellations, and other interactions that effectively moot the corresponding initial payments. This ambiguity must be resolved by the trier of fact. But because the franchisees admit they owe at least $278,117.00, I grant summary judgment on IJL's breach of contract counterclaim to that extent. Any damage amount in excess of $278,117.00 is genuinely disputed and must be determined by the trier of fact after the resolution of the franchise agreements' ambiguous terms.

**B.   Franchisees' Tortious Interference Claim**

IJL argues that it cannot have tortiously interfered with the franchisees' contractual relations or prospective economic advantage unless and until it fails to renew or terminates one or more of their franchise agreements. IJL contends that because each franchise agreement is still active, the franchisees' claim is unripe. The franchisees respond that this claim is ripe because IJL intends to terminate or non-renew the agreements in the future.

"The issue of ripeness is a question of law." *In re Coleman*, 560 F.3d 1000, 1003 (9th Cir. 2009). Ripeness chiefly concerns "timing," and is intended "to separate matters that are premature for review because the injury is speculative and may never occur from cases that are appropriate for federal court action." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (quotation omitted). Constitutional ripeness requires plaintiffs to "present concrete legal issues, . . . not abstractions." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (quotation omitted).

The franchisees' claim for tortious interference is unripe because IJL has not terminated or non-renewed a franchise agreement. *See Wichinsky v. Mosa*, 847 P.2d 727, 730-31 (Nev. 1993) (providing that harm to the plaintiff is an element of tortious interference). Unless and until ILJ does so, the franchisees' claim is abstract and speculates as to IJL's future conduct. I

therefore grant IJL's motion for summary judgment as to the franchisees' tortious interference claim, without prejudice to the franchisees asserting this claim in another lawsuit if it becomes ripe.

**C.    Remaining Claims**

Genuine disputes of material fact preclude summary judgment on IJL's remaining claims for declaratory judgment and breach of the implied covenant of good faith and fair dealing, as well as the franchisees' remaining claims for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the MFA, WFDL, and IFDA.[5]  A reasonable jury could conclude that underpayment to IJL was not fraudulently motivated or made in bad faith, but instead resulted from myriad other issues or negligence. Such a breach would not be incurable, and that conclusion would implicate all remaining claims. I therefore deny summary judgment on these claims.

**D.    Injunctive Relief**

IJL argues that the franchisees' request for injunctive relief is unripe "and will be rendered moot by [my] decision on IJL's request for declaratory relief." ECF No. 52 at 29.  The

---

[5] *See, e.g.*, ECF Nos. 52-2 at 217 (allocating responsibility for the accuracy of Profit and Loss Balance Sheets to the franchisees); 52-2 at 217-18 (explaining that IJL invoiced the franchisees and automatically withdrew corresponding payments from their accounts, but also directed the franchisees to audit invoices for discrepancies); 52-3 at 135-36 (explaining that the franchisees trusted IJL to properly invoice royalties and withdraw payments accordingly); 52-4 at 159-60 (providing that the franchisees overpaid IJL at times, and inaccurately represented revenues due to reporting limitations imposed by IJL's reporting system); 52-3 at 138 (discussing limitations of the IJL reporting app, and noting that IJL corporate was aware of these limitations); 52-1 at 36 (directing franchisees to "establish and maintain" their own bookkeeping, accounting, and recordkeeping system for reporting purposes); 53-8 at 3 (blaming IJL's reporting system for any revenue discrepancies and underpayments).

franchisees do not respond.  Because genuine disputes remain on some claims, I deny summary judgment on whether injunctive relief is appropriate.[6]

**III.      <u>CONCLUSION</u>**

I THEREFORE ORDER that Defendant It's Just Lunch International, LLC's motion for summary judgment **(ECF No. 52) is GRANTED in part** as set forth above.

DATED this 11th day of March, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[6] In addition, IJL stipulated not to terminate or non-renew any franchise agreements pending this litigation. ECF No. 52-4 at 168.