HOWARD & HOWARD ATTORNEYS PLLC
Robert Hernquist, Nevada Bar No. 10616
rwh@h2law.com
Matthew J. Kreutzer, Nevada Bar No. 8834
mjk@h2law.com
Wells Fargo Tower, Suite 1000
3800 Howard Hughes Parkway
Las Vegas, Nevada 89169-5980
Telephone: (702) 257-1483
Facsimile: (702) 567-1568

DADY & GARDNER, P.A.
John D. Holland (*Pro hac vice*)
jholland@dadygardner.com
5100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 359-3504

*Attorneys for Plaintiffs and Counterclaim Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IJL MIDWEST MILWAUKEE, LLC, and SARA DARLING, IJL MIDWEST HOLDINGS, LLC, IJL MIDWEST CHICAGO, LLC, IJL CLEVELAND, LLC, IJL MIDWEST DENVER, LLC, and IJL DC HOLDINGS, LLC,<br><br>Plaintiffs/Counterclaim-Defendants,<br><br>vs.<br><br>IT'S JUST LUNCH INTERNATIONAL, LLC,<br><br>Defendant/Counterclaimant. | Case No.  2:19-cv-01006-APG-EJY<br><br>**JOINT PRETRIAL ORDER**<br><br>Complaint File:  5/15/2019<br><br>Case Removed to Federal Court: 6/12/2019 |

After pretrial proceedings in this case,

IT IS ORDERED:

I.

Page 1 of 35

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

**The Midwest Parties' Contention**: This action originated as an action for injunctive relief, and/or money damages, on the part of Plaintiff IJL Midwest Milwaukee ("IJL Milwaukee"), a Milwaukee-based franchisee of the "It's Just Lunch"-brand franchise, and its principal operator, Plaintiff Sara Darling, a resident of Minnesota ("Darling"), to prevent wrongful non-renewal by the franchisor, Defendant It's Just Lunch International, LLC ("IJL") of IJL Milwaukee's franchise location.

By way of background, IJL Milwaukee proposed to renew its franchise with IJL but received no response from IJL in advance of expiration of the term of IJL Milwaukee's franchise agreement.  In the absence of any substantive renewal feedback from IJL (let alone within the 90-day period referenced in Wis. Stat. § 135.04 or the 180-day notice referenced in Minn. Stat. 80C.14, subd. 4), IJL Milwaukee and Darling filed this suit seeking to enjoin IJL from wrongfully non-renewing IJL Milwaukee's franchise in violation of the Minnesota Franchise Act, Minn. Stat. § 80C.14, the Wisconsin Fair Dealership Law, Wis. Stat. § 135.04, and Paragraph 14(B) of the underlying franchise agreement between IJL Milwaukee and IJL.

Defendant IJL responded by bringing counterclaims against Plaintiffs IJL Milwaukee and Sara Darling.  Defendant IJL also filed *new claims* against Darling's affiliated franchise locations: IJL Midwest Holdings, LLC (the Minneapolis location, hereinafter "IJL Minneapolis"), IJL Midwest Denver, LLC (the Denver location, hereinafter "IJL Denver"), IJL Cleveland, LLC (the Cleveland location, hereinafter identified as "IJL Cleveland"), IJL Midwest Chicago (the Chicago location, hereinafter identified as "IJL Chicago"), and IJL DC Holdings, LLC (the Washington, D.C. location, hereinafter identified as IJL DC)[1] (collectively, IJL Milwaukee, IJL Minneapolis,

---

[1] Despite not being parties to the original action filed in Nevada state court, IJL Minneapolis, IJL Chicago, IJL Cleveland, IJL Denver, and IJL DC are to be characterized as "Plaintiffs" since Defendant IJL filed claims against those entities (as explained in n. 1 of the Court's summary judgment ruling, ECF 55).  Notably, IJL Minneapolis, IJL Chicago, IJL Cleveland, and IJL Denver

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

IJL Denver, IJL Cleveland, IJL Chicago, and IJL DC are referred to as the "Midwest Parties").

Defendant IJL contends that the Midwest Parties failed to pay IJL for royalties and marketing fees owed to IJL in the cumulative amount of $1,111,871. The reality is that Defendant IJL miscalculated the amounts owed to it and never even bothered to invoice the dollar amounts Defendant IJL contends are owed by the various Midwest Parties.

IJL also declined to seek reimbursement for the $1,111,871 dollar amount using the contractual protocol expressly identified in Paragraph 3(C) of each of the Midwest Parties' respective franchise agreements with IJL.

IJL has indicated that IJL does not want to offer any of the Midwest Parties the opportunity to "cure," either: (a) pursuant to the collection protocol established in Paragraph 3(C) of the Midwest Parties' respective franchise agreements with IJL; or (b) pursuant to applicable statutes including the Minnesota Franchise Act, Minn. Stat. § 80C.14, subds. 3 and 4, the Wisconsin Fair Dealership Law, Wis. Stat. § 135.04, and the Illinois Franchise Disclosure Law, 815 ILCS § 705/19. Instead, IJL seeks an order the above-described royalty dispute is "incurable" even though the protocol described in Paragraph 3(C) of the Midwest Parties' franchise agreements reflects that such payment dispute is not "incurable." To the contrary, Paragraph 3(C) of the franchise agreements expressly defines IJL's remedy for any alleged underpayment.

Darling and each of the Midwest Parties seek a judgment that Defendant IJL failed to

---

will, by contract, issue notices of renewal at least 270 days prior to expiration in May 2023. To the extent that IJL remains silent in response to, or declines, such affiliate franchisees' forthcoming renewal requests, this will create additional claims for violation of the Minnesota Franchise Act, Minn. Stat. § 80C.14, and the Illinois Franchise Disclosure Act, 815 ILCS § 705/20, among others. The Midwest Parties will be prejudiced to the extent that IJL's claims against the IJL Minneapolis, IJL Chicago, IJL Denver, IJL Cleveland, and IJL DC are tried without simultaneously trying such entities' potential claims against Defendant IJL. As the Court explained in ECF 55, "in the interest of efficiency, [the Court] will treat the so-called third-party defendants as joined plaintiffs." In the interest of efficiency, the Court should, likewise, allow all Midwest Parties to present their affirmative claims as part of a single trial proceeding.

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483 FAX: (702) 567-1568

timely renew the Midwest Parties' respective franchise agreements: (a) in breach of the renewal protocol set forth in Paragraph 14(B) of the Midwest Parties' respective franchise agreements; and/or (b) in violation of applicable statutes, including the Minnesota Franchise Act, Minn. Stat. § 80C.14, subd. 4 (as applied to each of the Midwest Parties' franchise agreements), the Wisconsin Fair Dealership Law, Wis. Stat. § 135.04 (as applied to IJL Milwaukee), and the Illinois Franchise Disclosure Law, 815 ILCS § 705/20 (as applied to IJL Chicago).

Finally, Darling and each of the Midwest Parties seek a declaratory judgment that Defendant IJL may not decline to renew any of the Midwest Parties' respective franchises without having, first, complied with *both*: (a) the *contractual* protocol for resolving payment disputes under Paragraph 3(C) of each franchise agreement; and (b) the separate *statutory* renewal protocols set forth in Minnesota Franchise Act, Minn. Stat. § 80C.14, subd. 5 (as applied to each of the Midwest Parties' franchise agreements), the Wisconsin Fair Dealership Law, Wis. Stat. § 135.04 (as applied to IJL Milwaukee), and the Illinois Franchise Disclosure Law, 815 ILCS § 705/20 (as applied to IJL Chicago).

**IJL's contention:**   IJL has six franchise agreements with the Midwest Parties allowing them to use IJL's trademarks and intellectual property to operate dating and matchmaking businesses for single, adult clients in defined territories.  These franchise agreements uniformly require the Midwest Parties to report all gross revenue to IJL, and to pay IJL royalties and advertising fees based on a percentage of all gross revenue.  The Midwest Parties egregiously failed to do so.  For example, over the six-year period from 2012 to 2018, the Midwest Parties charged some of their clients both an initial membership fee and ongoing monthly fees, but reported and paid IJL only for the initial membership fees.  Similarly, the Midwest Parties failed to report any of the revenue they derived from non-recurring charges for events, dinner club programs, or coaching services.  Even the Midwest Parties' own experts admit that the Midwest

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

Parties collectively underpaid IJL to the tune of hundreds of thousands of dollars.  The Court has since entered judgment in IJL's favor for $278,211 on IJL's motion for summary judgment.  ECF No. 55.  And the Midwest Parties' experts' figure is that low only because they rely on a definition of "Gross Revenue" that contradicts the plain terms of the franchise agreements.  When the proper, unambiguous definition is applied, and contractual interest is considered, the amount of unpaid royalties and advertising fees totals $1,111,871.  Accordingly, still at issue is whether the Midwest Parties owe IJL the difference between the $278,211 judgment entered by this Court and the $1,111,871 that IJL claims is due.

Also, at issue is IJL's claim for a declaratory judgment that the Midwest Parties' egregious breach of trust permits IJL to terminate or elect not to renew the franchise agreements without offering the Midwest Parties a futile opportunity to cure their deficient performance.  The only explanation for so extreme and longstanding a pattern of underreporting and underpayment is dishonesty.  Because trust is vital to the franchisor-franchisee relationship, courts have recognized that when the franchisee lies to the franchisor about the revenues it generates, the breach is incurable, and the relationship is over.  Once the franchisee lies, it cannot entirely cure the breach by simply paying back the money it stole from the franchisor.  Rather, courts have long held that when the franchisee lies, it must pay the ultimate price—loss of its franchise.  That is the declaration IJL seeks at trial.

Also remaining for trial are all the Midwest Parties' claims except for the claim for tortious interference with the Midwest Parties' contractual relations or prospective economic advantage.  The Court ruled against the Midwest parties on that claim.  See Order Granting in Part Defendant's Motion for Summary Judgment.  ECF No. 55. The Midwest parties' remaining claims, although couched in different ways, amount to the same argument that IJL must provide notice and an opportunity to cure before terminating or refusing to renew the contracts.  IJL claims that it is

under no such obligation. But even if IJL were obliged to provide notice and an opportunity to cure, it has not violated that obligation, because IJL has not yet terminated or refused to renew any of the Franchise Agreements. Rather, it has sought a declaration from the Court that it may terminate or non-renew. To the extent the Court determines notice must be given, the contracts give IJL the discretion to extend the agreements for a period sufficient to provide such notice.

II.

**Joint Statement of jurisdiction**: Plaintiffs IJL Milwaukee and Darling originally commenced this action by filing a complaint against IJL on May 15, 2019, in the District Court of Clark County, State of Nevada, docketed as No. A-19-794894-B (the "Complaint"). Defendant IJL subsequently removed the case to the District of Nevada on June 12, 2019.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action involves citizens of different states and the amount in controversy exceeds $75,000.

As reflected below, the parties are completely diverse:

- *Defendant IJL* is a limited liability company organized under the laws of the State of Nevada with a principal place of business in Palm Desert, California. Defendant IJL's sole member is Its Just Lunch Holdings, LLC ("IJLH"), a Nevada limited liability company, with a principal place of business in Palm Desert, California. IJLH, in turn, has two members; (1) IJL Holding Company, a Delaware corporation, with its principal place of business in New York, New York; and (2) IJL Chas Holdings LLC ("IJL Chas"), a Nevada limited liability company, with its principal place of business in San Diego, California. Irene La Cota, a resident of San Diego, California, is, in turn, the sole member of IJL Chas.

- *Plaintiff Darling,* the principal operator of each of the Plaintiff LLCs, is a resident of Arden Hills, Minnesota.

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

- *Plaintiffs IJL Milwaukee, IJL Midwest Holdings, LLC, IJL Midwest Chicago, LLC, IJL Cleveland, LLC, IJL Midwest Denver, LLC, and IJL DC Holdings, LLC* are limited liability companies, all of which are organized under Minnesota law. Plaintiff IJL Milwaukee has a principal place of business in Milwaukee, Wisconsin. Plaintiff IJL Midwest Holdings, LLC has a principal business address in Minneapolis, Minnesota. Plaintiff IJL Midwest Chicago, LLC has a principal place of business in Chicago, Illinois. Plaintiff IJL Cleveland, LLC has a principal place of business in Cleveland, Ohio. Plaintiff IJL Midwest Denver, LLC has a principal place of business in Denver, Colorado. Plaintiff IJL DC Holdings, LLC has a principal business address in Washington, D.C. The members of each of the Plaintiff LLCs are Darling and Proprietor's Capital Holdings, LLC ("PCH"). The members of PCH are, in turn, Darling and Scott Evert, a resident of St. Paul, Minnesota.

III.

The following facts are admitted by the parties and require no proof:

1. IJL is a Nevada limited liability company with its principal place of business at 74130 Country Club Drive, Suite #202, Palm Desert, California, 92260. IJL's Counterclaim and Third Party Compl. (ECF 35) and Midwest Parties' Reply and Answer (ECF 46) at ¶ 4.

2. IJL designed and developed a method of operating dating and matchmaking businesses where single, adult clients are matched and a meeting is arranged for the two clients (the "IJL System"). Id.

3. IJL grants franchises to persons or entities that meet IJL's qualifications to own and operate an It's Just Lunch franchised business in a defined territory using the IJL System and IJL's federally registered trademarks. Id.

4. Defendant IJL also *directly* operates its own corporate-operated locations in

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

multiple geographic markets across the country. (IJL Answer at ¶ 5.)

5.      Since 2006, Defendant IJL has closed, terminated, purchased,  non-renewed, or mutually terminated and accepted the surrender of former franchisee-owned locations in Albany, Albuquerque, Atlanta, Austin, Birmingham, Boise, Brisbane, Calgary, Charleston, Charlotte, Cincinnati, Columbus, Dallas, Detroit Suburbs, Dublin, Edmonton, Ft. Myers, Harrisburg, Hartford, Jacksonville, Kansas City, Las Vegas, Los Angeles, Louisville, Melbourne, Naples, Nashville, New Orleans/Baton Rouge, New York City, Norfolk-Hampton Roads, Omaha, Orange County, Philadelphia, Philadelphia/Suburbs, Phoenix, Pittsburgh, Portland, Raleigh—Durham, Reno, Sacramento, San Diego, Sarasota, Seattle, South Carolina, St. Louis, Sydney, Tampa, Toronto, Vancouver, and Western New York (i.e., Buffalo).  (IJL's Answers to First Set of Interrogatories: Interrogatory No. 8.)

6.      Defendant IJL, now, directly operates 52 locations across the U.S. as corporate store locations (*i.e.*, non-franchised locations).

7.      The only remaining franchisee-owned locations not owned by Plaintiffs are Houston and San Francisco.  (Deposition of Brown at 40:20-41:8.)

8.      Plaintiff IJL Milwaukee is a limited liability company organized under Minnesota law with a principal place of business in Milwaukee, Wisconsin. (IJL Answer at ¶ 6.)

9.      Plaintiff Sara Darling is a Minnesota resident and the principal operator of IJL Milwaukee. (IJL Answer at ¶ 7.)

10.      Darling and IJL Milwaukee presently operate an "It's Just Lunch"-brand franchise in Milwaukee, Wisconsin pursuant to a written franchise agreement with Defendant IJL.  (IJL Answer at ¶¶ 8-9.)

11.      Plaintiff IJL Milwaukee serves customers in the Milwaukee, Wisconsin area.

12.      That "Franchise Agreement," attached as Exhibit A to the Complaint, was

Page 8 of 35

originally executed on April 30, 2004 by a predecessor franchisee.  (IJL Answer at ¶ 10.)

13.     IJL Milwaukee subsequently came to operate the Milwaukee franchise following a purchase from that predecessor franchisee and has continued to operate the Milwaukee franchise pursuant to the Franchise Agreement. (IJL Answer at ¶ 11.)

14.     On May 25, 2014, IJL, IJL Milwaukee, and Darling renewed the Milwaukee franchise relationship via execution of the Addendum to Franchise Agreement attached as Exhibit B to the Complaint (the "Addendum"). (IJL Answer at ¶ 12.)

15.     IJL Milwaukee's Franchise Agreement, as amended by the Addendum, was set to expire on May 25, 2019.  (IJL Answer at ¶ 13.)

16.     In anticipation of the upcoming expiration of the Milwaukee Franchise Agreement, as amended by the Addendum, IJL Milwaukee and Darling provided written notice of intent to renew the Milwaukee franchise to Defendant IJL. (IJL Answer at ¶ 14.)  That written "Notice of Renewal" is attached to the Complaint as Exhibit C.

17.     The written Notice of Renewal sent to the Franchisor on August 27, 2018 satisfied IJL Milwaukee's written notice obligations under Paragraph 14 of the Franchise Agreement, as amended.  (IJL Answer at ¶ 15.)

18.     Defendant IJL did not respond to IJL Milwaukee's Notice of Renewal request within 90 days.

19.     Defendant IJL has not forwarded proposed renewal paperwork in response to the Notice of Renewal by IJL Milwaukee.  (IJL Answer at ¶ 17.)  In other words, Defendant IJL has not yet approved Plaintiff IJL Milwaukee and Darling's request to renew the Milwaukee location.

20.     Consequently, Plaintiffs IJL Milwaukee and Darling filed suit against IJL, including a request for injunctive relief to prevent non-renewal of the Milwaukee franchise, on May 15, 2019.

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

21.   Rather than litigating the merits of a claim for temporary injunctive relief, counsel for the Parties stipulated and agreed on May 21, 2019 that: "(A) the term of Plaintiffs' Milwaukee-based franchise is extended pending trial in the Litigation; (B) Defendant shall take no steps to non-renew or otherwise terminate the franchise rights of Plaintiffs or their affiliated entities pending trial in the Litigation."  (*See* signed Stipulation dated May 21, 2019.)

22.   Defendant IJL has not issued any written "notice," or the opportunity to cure/rectify "any claimed deficiency" to IJL Milwaukee or the other Midwest Parties.

23.   Defendant IJL contends that outstanding amounts allegedly owed by IJL Milwaukee (which Defendant IJL's expert calculates to be $39,018 as reflected in Exhibit 6.0 of Joseph Lesovitz' Report) constitute an incurable default.

24.   Defendant IJL similarly contends that the amounts allegedly owed by IJL Milwaukee's affiliates constitute and incurable default.

25.   The Midwest Parties are all citizens of Minnesota.  IJL Counterclaim at ¶¶ 6-9. Darling and Proprietors Capital Holdings, LLC own Midwest, which is the parent company of each of the remaining Midwest Parties.  Id. at ¶ 7.

26.   The Midwest Parties are franchisees of IJL as follows:

•   IJL Minneapolis has operated under a January 27, 2006 franchise agreement with IJL (the "Minneapolis Franchise Agreement") under which IJL Minneapolis was granted the right and undertook the obligation to operate an It's Just Lunch franchise in Minneapolis, Minnesota.

•   IJL Cleveland has operated under a November 1, 2007 franchise agreement, Cleveland entered a Franchise Agreement (the "Cleveland Franchise Agreement") under which IJL Cleveland was granted the right and undertook the obligation to operate an It's Just Lunch franchise in Cleveland, Ohio.

•   IJL Denver has operated under a June 1, 2008 Franchise Agreement (the "Denver

Franchise Agreement") under which IJL Denver was granted the right and undertook the obligation to operate an It's Just Lunch franchise in Denver, Colorado.

•    IJL Chicago has operated under a September 5, 2012 Franchise Agreement (the "Chicago Franchise Agreement") under which IJL Chicago was granted the right and undertook the obligation to operate an It's Just Lunch franchise in Chicago, Illinois.

•    IJL Milwaukee has operated under a September 5, 2012 Franchise Agreement by assignment (the "Milwaukee Franchise Agreement") under which IJL Milwaukee was granted the right and undertook the obligation to operate an It's Just Lunch franchise in Milwaukee, Wisconsin.

•    IJL DC has operated under a June 1, 2015, DC entered into a Franchise Agreement (the "DC Franchise Agreement") under which IJL DC was granted the right and undertook the obligation to operate an It's Just Lunch franchise in Washington, D.C.

The Minneapolis, Cleveland, Denver, Chicago, Milwaukee, and DC Franchise Agreements are collectively referred to as the "Franchise Agreements," or the "Midwest Parties' Franchise Agreements."

27.    These Franchise Agreements are valid and legally binding on the parties.

28.    This Court has jurisdiction over the parties and the subject matter of this dispute.

29.    Renewal of the Franchise Agreements is governed by Section 14(B) of the Franchise Agreements.  On May 21, 2019, the parties stipulated that IJL shall take no steps to non-renew the Franchise Agreements pending trial in this action unless the Midwest Parties materially breach their respective Franchise Agreements in the future and those breaches remain uncured. See signed Stipulation dated May 21, 2019.

30.    On August 1, 2018, IJL served the Midwest Parties with notices that they were in default of their Franchise Agreements for several reasons, including failing to provide IJL with

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

their financial statements and income tax returns as required by Sections 8(G) and 11 of the Franchise Agreements.  These notices advised the Midwest Parties that they could cure the defaults by providing the missing financial statements and tax returns.

31.     On or around August 8, 2018, the Midwest Parties provided IJL with their financial statements and tax returns.

32.     The Midwest Parties allege that they found it difficult to report revenue through the IJL Application (the "IJL App").

33.     Prior to 2019, IJL calculated the Midwest Parties' respective fee obligations based on information entered by the Midwest Parties in the IJL App.

34.     Subsequently, the Midwest Parties started providing their financial statements and have paid Franchise Fees based on the gross revenues reported as "Sales" on the financials since August 2018.

35.     The Midwest Parties have confirmed that the financial statements they produced in this matter are accurate.

IV.

The following facts, though not admitted, will not be contested at trial by evidence to the contrary:

a.  Darling and all of her franchised operating entities "are citizens of Minnesota."  (See ECF 36, IJL's Answer and Counterclaim at ¶¶ 6-9, and ECF 52, IJL's Statement of Undisputed Material Facts for purposes of its Motion for Summary Judgment, acknowledging that, "The Midwest Parties are all citizens of Minnesota.")

b.  Plaintiff IJL Milwaukee's franchise is "situated in" Wisconsin for purposes of the WFDL. (*See* IJL Answer at ¶ 39.)

c.  The Franchise Agreement between IJL and IJL Milwaukee, as amended, is a "dealership agreement" within the meaning of the WFDL because it is a:  "… contract or agreement,

either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise." (*See* Wis. Stat. § 135.02(3)(a) and IJL Answer at ¶ 40.)

d.    Defendant IJL elected to sell a franchise to be located within the State of Wisconsin with knowledge that the Franchisor could not "contract away" (via a contractual choice-of-law clause, or otherwise) the regulatory framework of the WFDL.  This is because the WFDL expressly provides that "[t]he effect of [the WFDL] may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only." Wis. Stat. § 135.025(3). (IJL Answer at ¶¶ 42-43.)

## V.

The following are the issues of fact to be tried and determined at trial.[2] [Each issue of fact must be stated separately and in specific terms.]

a.    Did each of the respective Midwest Parties express an interest in renewing their respective franchises in advance of expiration?

b.    Has IJL permitted any of the Midwest Parties to renew their respective franchises since August of 2018?

c.    Did Defendant IJL provide each of the Midwest Parties with 180 days' advance,

---

[2] Should the attorneys or parties be unable to agree on the statement of issues of fact, the joint pretrial order should include separate statements of issues of fact to be tried and determined upon trial.

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX:  (702) 567-1568

written notice of Defendant IJL's intent not to renew each of the Midwest Parties' franchise agreements?

d.     Did Defendant IJL provide each of the Midwest Parties with a written identification of steps each such party may take to "cure" any alleged breach?

e.     Did Defendant IJL provide IJL Milwaukee with a 90-day notice of intent not to renew under Wis. Stat. § 135.04?

f.     Did Defendant IJL provide IJL Chicago with a 6-month notice of intent not to renew under 815 ILCS § 705/20?

g.     Has Defendant IJL proposed to compensate IJL Chicago in the event of Defendant IJL's non-renewal of IJL Chicago's franchise (whether pursuant to 815 ILCS § 705/20, or otherwise)?

h.     Does Defendant IJL reserve the right to take over operation of any of the Midwest Parties' respective franchises, for operation as a corporate location, upon non-renewal of the Midwest Parties' respective franchises?

i.     Will the Midwest Parties be able to recover the fair market value of their respective franchises if one or more of the Midwest Parties is not renewed by Defendant IJL?

j.     Prior to August 2018, did Defendant IJL calculate the Midwest Parties' annual royalty and marketing fee obligations using the membership price the Midwest Parties added to the clients' files in the IJL App?

k.     Did Defendant IJL's invoices prior to 2019 include a breakout explanation for the manner in which Defendant IJL calculated the dollar amounts invoiced to the Midwest Parties?

l.     Has Defendant IJL invoiced each of the Midwest Parties the dollar amount which Defendant IJL's expert claims is owed to Defendant IJL by each of the Midwest Parties?

m.     Does any invoice issued by Defendant IJL to any of the Midwest Parties remain

unpaid?

n.      Does Defendant IJL have the ability to debit/ACH payments allegedly owed by IJL Milwaukee (and/or any of the other Midwest Parties) according to the protocol described in Paragraph 3(C) of the Franchise Agreements?

o.      Has Defendant IJL exercised its rights to debit/ACH payments allegedly owed by the Midwest Parties according to the protocol described in Paragraph 3(C) of the Franchise Agreement(s)?

p.      Has Defendant IJL declined to exercise its contractual rights under Paragraph 3(C) of the Franchise Agreements because Defendant does not want to allow any of the Midwest Parties to "cure" (*i.e.*, by paying dollar amounts actually owed to Defendant IJL)?

q.      Has Defendant IJL held off on responding to the Midwest Parties' respective requests to renew because Defendant IJL, first, seeks to secure a declaration from this Court that any alleged default on the part of the Midwest Parties is incurable?  (*See*, *e.g.*, IJL's Answers to Interrogatory Nos. 4 and 5, and IJL's Response to Request for Production No. 6.)

r.      Do Defendant IJL's corporate locations use a different software platform for purposes of reporting their revenue?

s.      Why didn't Defendant IJL allow system franchisees to use the same software platform for purposes of reporting their revenue?

t.      Has Defendant IJL ever facilitated system franchisees' use of a Point-of-Sale ("POS") system for purposes of collecting customer payments?  If not, why not?

u.      Did the Midwest Parties intentionally underreport their gross revenues to IJL?

v.      Were the Midwest Parties aware they were inaccurately reporting gross revenues to IJL through the IJL App?

w.      Did the Midwest Parties know their gross revenues did not match the invoices sent

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483 FAX: (702) 567-1568

to them by IJL?

      x.     Did the Midwest Parties act in bad faith by not advising IJL that the gross revenues they were reporting did not match the gross revenues on their financial statements?

      y.     Does IJL have discretion to unilaterally extend the term of the Franchise Agreements in order to provide the Midwest Parties reasonable time to correct deficiencies or to provide itself additional time to service any notices required pursuant to Section 14(B) of the Franchise Agreement?

      z.     Does the "Gross Revenue" definition provided in the Franchise Agreements include "all revenues from sales conducted upon or from the business"?

      aa.     Does the Franchise Agreements' definition of Gross Revenue specifically list what is <u>not</u> included in definition of "Gross Revenue" as: only taxes imposed by government entities and paid by the Midwest Parties?

      bb.     Did IJL rely the Gross Revenues reported by the Midwest Parties through the IJL App to calculate the Franchise Fees due under the Franchise Agreements.

      cc.     On August 22, 2018, did IJL's counsel write to counsel for the Midwest Parties to request an explanation for the discrepancy between the Midwest Parties' financial statements and the Gross Revenue they had reported to IJL?

      dd.     On September 7, 2018, did counsel for the Midwest Parties provide a list of explanations for the differences between the gross revenues reported to IJL and those recorded in the Midwest Parties' financial statements?

      ee.     Did the Midwest Parties initially charge clients a flat initial membership fee up front or within 30 days of signing up?

      ff.     In or around August 2009, did the Midwest Parties began offering memberships where they charged monthly fees in addition to the initial membership fee?

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

gg.     Did the Midwest Parties not report these monthly fees to IJL?

hh.     In or around 2013, did the Midwest Parties began offering financing options to clients who could not afford the initial sign-up fee?

ii.     In or around 2016, did the Midwest Parties begin reporting <u>only</u> eighty percent of the revenues from financed contracts because they <u>estimated</u> that they were receiving on average only eighty percent of the contract revenues from the financed contracts?

jj.     In early 2019, did the Midwest Parties lower the amount they recorded as the contract price to seventy percent?

kk.     Did the Midwest Parties also occasionally charge clients non-recurring event related fees for dinner club programs and coaching services?

ll.     Did the Midwest Parties not report any of the revenues associated with the dinner club programs and coaching services<u>?</u>

mm.     Was the IJL App designed to be a customer relationship management tool?

nn.     Prior to 2019, did IJL calculate the Midwest Parties' respective fee obligations using contracts uploaded by the Midwest Parties on the IJL App because the Midwest Parties did not submit their financial statements?

oo.     Prior to 2019, did IJL miscalculate the Midwest Parties' royalties and advertising fund payments because the Midwest Parties did not inform IJL that they had additional revenue that was not being reported in the IJL App?

pp.     Were the Midwest Parties required to accurately report their revenue by submitting financial statements and notify IJL of any discrepancies between the invoices they paid and the revenue they actually earned?

qq.     Did the Midwest Parties fail to inform IJL there were differences between the revenues they earned and the invoices they paid?

Page 17 of 35

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

rr.   Did IJL's notices regarding the underreporting of revenues constitute a response to the notice of renewal served by IJL Milwaukee?

## VI.

Plaintiffs and Defendant identify the following issues of law to be to be tried and determined at trial.[3] [Each issue of law must be stated separately and in specific terms.]

a.   Can Defendant IJL satisfy its contractual obligations under Paragraph 14(B) of the Franchise Agreement by offering *no response* to the Midwest Parties' respective notices of renewal within 90 days?

b.   Did Defendant IJL breach Paragraph 14(B) of its Franchise Agreements if it failed to respond to the Midwest Parties' respective notices of renewal within 90 days?

c.   Did Defendant IJL breach Paragraph 14(B) of its Franchise Agreement with IJL Milwaukee by failing to provide Plaintiff IJL Milwaukee *written notice of the existence of deficiencies in performance* which IJL Milwaukee would need to cure as a condition of being allowed to renew?

d.   Did Defendant IJL breach Paragraph 14(B) of its Franchise Agreement by failing to provide IJL Milwaukee *written notice of IJL Milwaukee's opportunity to cure/rectify any alleged breaches* of contract which Plaintiff IJL Milwaukee would be required to cure/rectify as a condition of being allowed to renew?

e.   Is Defendant IJL precluded from declining to renew in the absence of having provided IJL

---

[3] Should the attorneys or parties be unable to agree on the statement of issues of law, the joint pretrial order should include separate statements of issues of law to be tried and determined upon trial.

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX:  (702) 567-1568

Milwaukee written notice of, and an opportunity to cure/rectify, any asserted deficiencies in performance?

f.  Did Defendant IJL breach Paragraph 14(B) of the Franchise Agreements by failing to allow the Midwest Parties to renew?

g.  What, if any, legal basis (*i.e.*, contractual and statutory basis) exists for Defendant IJL's contention that the Midwest Parties' alleged breaches are "incurable"?

h.  Is there any contractual authority for Defendant IJL's legal position that failure to pay a royalty shortfall is "incurable" (in a circumstance where Paragraph 3(C) of the Franchise Agreements specifies the means/remedy by which Defendant IJL may, unilaterally, take action to address any alleged payment deficiency)?

i.  Did Counterclaimant IJL prove the existence of an *incurable* breach of contract on the part of each of the Midwest Parties?

j.  Is Defendant IJL contractually obligated under Paragraph 18(D) of its Franchise Agreements to pay costs and attorneys' fees as a result of Defendant IJL's refusal to renew?

k.  Did Defendant IJL violate the Wisconsin Fair Dealership Law, Wis. Stat. § 135.04, by failing to provide IJL Milwaukee *90 days' prior written notice of Defendant IJL's intent not to renew* IJL Milwaukee's franchise, upon expiration of the Franchise Agreement (*i.e.*, 90 days in advance of May 25, 2019)?

l.  Did Defendant IJL violate the Wisconsin Fair Dealership Law, Wis. Stat. § 135.04, by failing to provide IJL Milwaukee *10 days' prior written notice of Defendant IJL's intent not to renew* IJL Milwaukee's franchise, upon expiration of the Franchise Agreement (*i.e.*, 90 days in advance of May 25, 2019) because of the existence of a nonpayment issue? (*See* Wis. Stat. § 135.04, stating, "If the reason for … nonrenewal … is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

shall have 10 days in which to remedy such default from the date of delivery or posting of such notice.")

m. Alternatively, did Defendant IJL violate its obligation under Wis. Stat. § 135.04 by failing to provide IJL Milwaukee *10 days' advance written notice* that Defendant IJL would seek to exercise Defendant IJL's rights under Paragraph 3(C) of the Franchise Agreement to correct the "*nonpayment*" issue by withdrawing the allegedly unpaid sum from IJL Milwaukee's account?

n. Is there any statutory authority for Defendant IJL's position that IJL Milwaukee's failure to pay a royalty shortfall was "incurable" under the Wisconsin Fair Dealership Law (given that Wis. Stat. § 135.04[4] specifically affirmatively identifies a specific means of curing an alleged issue of nonpayment)?

o. Did Defendant IJL violate the Wisconsin Fair Dealership Law, Wis. Stat. § 135.04, by failing to provide Plaintiff IJL Milwaukee *written notice of any steps that Plaintiff IJL Milwaukee would need to take to rectify/cure* any alleged breach (unrelated to nonpayment) as a condition of being allowed to renew?

p. Is Defendant IJL precluded from claiming that Defendant IJL had "good cause" to non-renew IJL Milwaukee, for purposes of the Wisconsin Fair Dealership Law, as a result of Defendant IJL's *failure to provide written notice of any steps that Plaintiff IJL Milwaukee would need to take to rectify/cure* any alleged breach (unrelated to nonpayment) as a condition of being allowed to renew?

q. Is Defendant IJL precluded from claiming that Defendant IJL had "good cause" to non-

---

[4]  *See* the second sentence Wis. Stat. § 135.04 stating, in relevant part, that: "If the reason for … nonrenewal … is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice."

renew IJL Milwaukee, for purposes of the Wisconsin Fair Dealership Law, as a result of Defendant IJL's failure to provide Plaintiff IJL Milwaukee with an actual opportunity to rectify/cure any alleged breach as a condition of being allowed to renew?

r. Does Defendant IJL have "good cause" to terminate IJL Milwaukee's franchise under Wis. Stat. § 135.03?

s. Did Defendant IJL satisfy its notice and opportunity to cure/rectify under Wis. Stat. § 135.04 with respect to Defendant IJL's proposed termination of IJL Milwaukee?Were Defendant IJL's billing practices "reasonable" within the meaning of the Wisconsin Fair Dealership Law, Wis. Stat. § 135.02(4)(a)?

t. Were Defendant IJL's data entry practices for franchisees (like IJL Milwaukee) *comparable to those imposed by Defendant IJL on Defendant IJL's corporate locations* for purposes of the Wisconsin Fair Dealership Law, Wis. Stat. § 135.02(4)(a)?

u. Were Defendant IJL's *billing methods for its corporate affiliate locations different that the billing methods for franchisee locations* (like that of IJL Milwaukee) for purposes of Wis. Stat. § 135.02(4)(a)?

v. Did Defendant IJL carry its burden under Wis. Stat. § 135.03 to prove that Defendant IJL had "good cause" not to renew Plaintiff IJL Milwaukee?

w. Is Plaintiff IJL Milwaukee entitled to permanent injunctive relief under Wis. Stat. § 135.06 precluding Defendant IJL from non-renewing (and/or terminating) IJL Milwaukee until Defendant IJL has issued 10 days' advance notice specifying the "nonpayment of sums due"[5] amount and the means by which IJL Milwaukee may remedy/cure such nonpayment?

x. Is Plaintiff IJL Milwaukee entitled to permanent injunctive relief under Wis. Stat. § 135.06

---

[5] *See* Wis. Stat. § 135.04.

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

precluding Defendant IJL from non-renewing (and/or terminating) IJL Milwaukee until Defendant IJL has issued 90 days' advance written notice of any non-payment-related deficiencies in performance and 60 days' opportunity to cure?

y.  Is Defendant IJL obligated to pay costs and attorneys' fees as a result of Defendant IJL's violations of the Wisconsin Fair Dealership Law, Wis. Stat. § 135.06?

z.  May the Midwest Parties, each of which is a limited liability company owned in material part by Sara Darling, a resident of Minnesota, advance a claim for violation of the Minnesota Franchise Act, Minn. Stat. § 80C.14, subd. 4?

aa. Did Defendant IJL violate the Minnesota Franchise Act, Minn. Stat. § 80C.14, subd. 4, by failing to provide the Midwest Parties with 180 days' advance written notice of Defendant IJL's intention *not to renew*, upon expiration?

bb. Did Defendant IJL violate the Minnesota Franchise Act, Minn. Stat. § 80C.14, subd. 3, by seeking to terminate the Midwest Parties' respective franchises without having issued a 90-day notice of default and 60 days to cure?

cc. Was the evidence sufficient to show that Defendant IJL declined to renew, at least in part, because Defendant IJL would have the opportunity to convert the Midwest Parties' respective franchises into corporate operations, upon non-renewal (in violation of Minn. Stat. § 80C.14, subd. 4)?

dd. For purposes of Minn. Stat. § 80C.14, subd. 4, will the Midwest Parties be able to recover "fair market value" for their franchises in the absence of renewal by Defendant IJL?

ee. Is there any statutory basis for Defendant IJL's contention that a royalty shortfall is "incurable" under the Minnesota Franchise Act (given that Minn. Stat. Stat. § 80C.14, subds. 3(a)(1)-(3) reflect the limited list of bases for immediate termination without any opportunity to correct/cure)?

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX:  (702) 567-1568

ff. Are the Midwest Parties entitled to costs, disbursements, attorneys' fees, and injunctive relief under Minn. Stat. § 80C.17, subd. 1, as a result of any violation(s) by Defendant IJL of the Minnesota Franchise Act?

gg. Does Defendant IJL have a statutory basis for terminating the Midwest Parties' franchises under the Minnesota Franchise Act, Minn. Stat. § 80C.14, subd. 3?

hh. Did Defendant IJL satisfy its statutory obligations under 815 ILCS § 705/19 with respect to Defendant IJL's proposed termination of IJL Chicago?

ii. Do the provisions of the Wisconsin Fair Dealership Law, Minnesota Franchise Act, and Illinois Franchise Investment law supersede inconsistent contractual provisions appearing in the Franchise Agreements?

jj. Should any agents of Defendant IJL be deemed jointly and severally liable under Minn. Stat. § 80C.17, subd. 2, for having failed to timely renew the Midwest Parties' franchises?

kk. Is *invoicing* the amount allegedly owed to Defendant IJL a *condition precedent* to asserting a counterclaim for alleged non-payment?

ll. Is *debiting* IJL Milwaukee's account in accordance with Paragraph 3(C) a *condition precedent* to Defendant IJL's asserting a claim for alleged non-payment?

mm.     Did Defendant IJL *waive* its right to bring counterclaims for allegedly-unpaid royalties as a result of Defendant IJL's failure to exercise its contractual rights under Paragraph 3(C) of the Franchise Agreement (*i.e.*, as a result of failing to initiate an ACH withdrawal for any royalty deficiency from the Midwest Parties' respective accounts)?

nn. Was there an *accord and satisfaction* as a result of IJL Milwaukee's having paid all invoices presented to IJL Milwaukee by Defendant IJL?

oo. Is attempting to exercise its contractual remedy under Paragraph 3(C) (*e.g.*, by ACH'ing the outstanding amount of royalties allegedly owed by IJL Milwaukee) a *condition*

*precedent* to Defendant IJL's pursuing counterclaims for alleged "non-payment" against IJL Milwaukee?

pp. Did Defendant IJL *proximately cause its own alleged damages* by failing to exercise a contractual remedy available to Defendant IJL under Paragraph 3(C) of its Franchise Agreement with IJL Milwaukee?

qq. Did Defendant IJL *proximately cause its own alleged damages* by failing to have a reporting platform (for franchisees) that facilitates the franchisee's entry of customer payments, in real time, onto IJL's reporting platform?

rr.    Did Defendant IJL fail to pursue its counterclaims within the applicable limitations period?

ss.    Did Defendant IJL engage in a prior material breach of contract that precludes recovery by Defendant IJL?

tt.    Do the Midwest Parties owe IJL the amount of $1,111,871 in unpaid royalties, interest and late fees, less the prior judgment amount of $278,211?

uu.    Have the Midwest Parties materially breached the Franchise Agreements because of their failure to fully pay royalties to IJL?

vv.    May IJL terminate or refuse to renew the parties' Franchise Agreements based on the Midwest Parties' alleged underreporting scheme without providing an opportunity to cure?

ww.    Was a notice of nonrenewal required when notice was provided that IJL was investigating several defaults under IJL Milwaukee's Franchise Agreement and the parties stipulated that the Milwaukee Franchise Agreement would not be terminated during this action on the issues being litigated in this action?

xx.    Are the Midwest Parties contractually obligated under Paragraph 18(D) of the Franchise Agreements to pay costs and attorneys' fees as a result of their breach of the Franchise

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

Agreement?

yy.   Did the Midwest Parties have a duty to advise IJL that the Gross Revenues they reported did not match the Midwest Parties' financial statements?

zz.   Did the Midwest Parties intentionally conceal the different between their actual Gross Revenues and the Gross Revenues they reported to IJL through the IJL App?

aaa.   Could IJL directly debit amounts it contends are owed by the Midwest Parties under Section 3(C) of the Franchise Agreements when the Midwest Parties have informed IJL that they dispute the amount IJL contends is owed?

bbb.   Was the evidence sufficient to show that the Midwest Parties intentionally underreported their Gross Revenues (as defined in the Franchise Agreements)?

ccc.   Was the evidence sufficient to show that the Midwest Parties underreported their Gross Revenues in bad faith?

VII.

The following exhibits are stipulated into evidence in this case and may be so marked by the clerk:

Franchise Agreement/Amendments between IJL and IJL Midwest Milwaukee, LLC ("IJL Milwaukee").

Franchise Agreement/Amendments between IJL and IJL Midwest Holdings, LLC ("IJL Minneapolis").

Franchise Agreement/Amendments between IJL and IJL Midwest Chicago, LLC ("IJL Chicago").

Franchise Agreement/Amendments between IJL and IJL Cleveland, LLC ("IJL Cleveland").

Franchise Agreement/Amendments between IJL and IJL DC Holdings, LLC ("IJL DC").

Franchise Agreement/Amendments between IJL and IJL Midwest Denver, LLC ("IJL Denver").

Chapter Seven of IJL's Operations Manual.

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483 FAX: (702) 567-1568

Notices of Default served on the Midwest Parties on August 1, 2018.

Letter from John Holland dated August 8, 2018.

Letter from Jeffrey Zucker dated August 22, 2018.

Deposition transcript of Melissa Brown taken in this action on March 26, 2021.

Deposition transcript of Lynn Poferl taken in this action on March 25, 2021.

IJL's responses to the Midwest Parties' Second Set of Interrogatories dated February 26, 2021.

Letter from John Holland dated September 7, 2018.

Deposition transcript of Sara Darling taken in this action on March 25, 2021.

IJL's initial expert report written by Joseph W. Lesovitz, CPA/ABV/CFF, CFA, CFE.

IJL's rebuttal expert report written by Joseph W. Lesovitz, CPA/ABV/CFF, CFA, CFE.

The Midwest Parties' initial expert report written by Rodney E. Oakes, CPA, CFF and Josiah Lamb, CPA, CFE.

The Midwest Parties' rebuttal expert report written by Rodney E. Oakes, CPA, CFF and Josiah Lamb, CPA, CFE.

Letter from Sara Darling dated August 27, 2018.

Stipulation entered between the parties of this action dated May 21, 2019.

Deposition transcript of Scott Hagel taken in this matter on March 25, 2021.

(Future) 2022 Profit and Loss Statements for each of the Midwest Parties

Addendum to Chicago Franchise Agreement dated December 20, 2017 (DARL003362-DARL003368)

Addendum to Cleveland Franchise Agreement dated December 20, 2017 (DARL003369-DARL003375)

Addendum to Denver Franchise Agreement dated December 20, 2017 (DARL003376-DARL003382)

UFOC excerpt (IJL-1750, 1793-1796)

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

Email to Sara Darling from Rachel Wilson dated December 15, 2017 (DARL004234-DARL004235)

IJL's Answers to the First Set of Interrogatories dated November 20, 2020

IJL's Supplemental Answers to First Set of Interrogatories dated November 25, 2020

IJL's Answers to the Third Set of Interrogatories dated March 15, 2021

IJL's Responses to the First Set of Requests for Production dated November 20, 2020

IJL's Responses to the Second Set of Requests for Production dated February 26, 2021

Email from Frank Reino dated April 23, 2021 [ECF 053-7]

Declaration of Sara Darling for the class action lawsuit *Rodriguez v. It's Just Lunch Int'l, Inc.* dated July 14, 2017 [ECF 53-11]

Declaration of Melissa Brown in opposition to the class action lawsuit *Rodriguez v. It's Just Lunch Int'l, Inc.* dated July 14, 2017 [ECF 53-12]

Email from IJL's Nancy Rubin to Bill Rossi and Sara Darling dated March 27, 2019 [ECF 053-10] (DARL004209 – DARL004212)

IJL Minneapolis Addendum DARL003383-DARL003389

Every document the Midwest Parties' **expert witnesses** identified as a document relied on in preparing their Initial and Rebuttal Expert Reports:

1.     Franchise Agreements and Addendums for Franchisees

2.     2012-2019 tax returns for IJL Midwest LLC

3.     IJL Midwest financial statements 2006-2020

4.     Notices of Default for Franchisees

5.     IJL Franchisor's Operations Manual

6.     March 27, 2019 email from IJL V.P. of Finance Nancy Rubin

7.     Lesovitz Expert Report dated February 18, 2021

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

Every document IJL's **expert witness** identified as a document relied on in preparing IJL's Initial

and Rebuttal Expert Reports:

| Exhibit Number | Contents |
|---|---|
| DARL000406-DARL001188 | IJL Midwest Holdings LLC Partnership Income Tax Returns for 2012, 2013 and 2018<br>- 2012 (DARL000406-DARL000611)<br>- 2012 (DARL000612-000789)<br>- 2018 (DARL000981-DARL001188) |
| DARL001192-DARL001388 | IJL Midwest Holdings Partnership Income Tax Returns for 2019 |
| DARL001495-DARL001532 | IJL Midwest Chicago LLC Checking account statements<br>- 12/31/2016- 1/31/2017 (001495-001497)<br>- 2/1/2017-2/28/2017 (001498-001500)<br>- 3/1/2017-3/31/2019 (001501-001504)<br>- 4/1/2017-4/28/2018 (001505-001507)<br>- 4/29/2017-5/31/2017 (001508-001511)<br>- 6/1/2017-6/30/2017 (001512-001514)<br>- 7/1/2017-7/31/2017 (001515-001517)<br>- 8/1/2017-8/31/2017 (001518-001520)<br>- 9/1/2017-9/29/2017 (001521-001523)<br>- 9/30/2017-10/31/2017 (001524-001526)<br>- 11/1/2017-11/30/2017 (001527-001529)<br>- 12/1/2017012/29/2017 (001530-001532) |
| DARL001566-DARL001568 | Merchant E-Solutions Plan Summary 04/2017 |
| DARL001645-DARL001648 | Merchant E-Solutions Plan Summary 03/2017 |
| DARL001693 | IJL Midwest Chicago P&L Sept-Dec 2012 |
| DARL001694 | IJL Midwest Chicago P&L Jan-Dec 2013 |
| DARL001695 | IJL Midwest Chicago P&L Jan-Dec 2014 |
| DARL001696 | IJL Midwest Chicago P&L Jan-Dec 2015 |
| DARL001697 | IJL Midwest Chicago P&L Jan-Dec 2016 |
| DARL001698 | IJL Midwest Chicago P&L Jan-Dec 2017 |
| DARL001699 | IJL Midwest Chicago P&L Jan-July2018 |
| DARL001700 | IJL Midwest Chicago Summary Balance Sheet 7/31/2018 |
| DARL001945 | IJL Midwest Cleveland P&L Jan-Dec 2012 |
| DARL001946 | IJL Midwest Cleveland P&L Jan-Dec 2013 |
| DARL001947 | IJL Midwest Cleveland P&L Jan-Dec 2014 |
| DARL001948 | IJL Midwest Cleveland P&L Jan-Dec 2015 |
| DARL001949 | IJL Midwest Cleveland P&L Jan-Dec 2016 |
| DARL001950 | IJL Midwest Cleveland P&L Jan-Dec 2017 |
| DARL001951 | IJL Midwest Cleveland P&L Jan-July 2018 |
| DARL002014-DARL002047 | Checking account statements |
| DARL002107-DARL002109 | Checking account statements |
| DARL002381 | IJL Midwest Denver P&L Jan-Dec 2012 |
| DARL002382 | IJL Midwest Denver P&L Jan-Dec 2013 |
| DARL002383 | IJL Midwest Denver P&L Jan-Dec 2014 |
| DARL002384 | IJL Midwest Denver P&L Jan-Dec 2015 |
| DARL002385 | IJL Midwest Denver P&L Jan-Dec 2016 |

| | |
|---|---|
| DARL002386 | IJL Midwest Denver P&L Jan-Dec 2017 |
| DARL002387 | IJL Midwest Denver P&L Jan-July 2018 |
| DARL002633 | IJL Midwest Milwaukee P&L Sept-Dec 2012 |
| DARL002634 | IJL Midwest Milwaukee P&L Jan-Dec 2013 |
| DARL002635 | IJL Midwest Milwaukee P&L Jan-Dec 2014 |
| DARL002636 | IJL Midwest Milwaukee P&L Jan-Dec 2015 |
| DARL002637 | IJL Midwest Milwaukee P&L Jan-Dec 2016 |
| DARL002638 | IJL Midwest Milwaukee P&L Jan-Dec 2017 |
| DARL002639 | IJL Midwest Milwaukee P&L Jan-July 2018 |
| DARL002952 | IJL Midwest Holdings P&L Jan-Dec 2012 |
| DARL002953 | IJL Midwest Holdings P&L Jan-Dec 2013 |
| DARL002954 | IJL Midwest Holdings P&L Jan-Dec 2014 |
| DARL002955 | IJL Midwest Holdings P&L Jan-Dec 2015 |
| DARL002956 | IJL Midwest Holdings P&L Jan-Dec 2016 |
| DARL002957 | IJL Midwest Holdings P&L Jan-Dec 2017 |
| DARL002958 | IJL Midwest Holdings P&L Jan-July 2018 |
| DARL003185 | IJL DC Holdings P&L Jan-Dec 2015 |
| DARL003186 | IJL DC Holdings P&L Jan-Dec 2016 |
| DARL003187 | IJL DC Holdings P&L Jan-Dec 2017 |
| DARL003188 | IJL DC Holdings P&L Jan-July 2018 |
| DARL003193 | Financial statements excel spreadsheet 2006-2019 |
| DARL003634-DARL003807 | Company overview- 2014 |
| DARL003883-DARL003897 | IJL App- join amount v. payments |
| DARL003967-DARL003973 | Correspondence to Jeffrey Zucker re amended notices of default relating to franchise agreements |
| DARL003974-DARL003976 | Combined with John Holland Letter |
| DARL003977-DARL004030 | Combined with John Holland Letter |
| DARL004031 | Annual net revenue (Dues & Collections) for Chicago, Cleveland, Denver, Milwaukee, Minneapolis and Washington, DC from 12/31/2006 to 12/31/2019 |
| DARL004034 | Chicago Franchise Invoice Summary 2017 |
| DARL004035 | Chicago Franchise Invoice Summary 2018 |
| DARL004036 | Chicago Franchise Invoice Summary 2019 |
| DARL004037 | Chicago Franchise Invoice Summary 2020 |
| DARL004038 | Cleveland Franchise Invoice Summary 2017 |
| DARL004039 | Cleveland Franchise Invoice Summary 2018 |
| DARL004040 | Cleveland Franchise Invoice Summary 2019 |
| DARL004041 | Cleveland Franchise Invoice Summary 2020 |
| DARL004042 | Denver Franchise Invoice Summary 2017 |
| DARL004043 | Denver Franchise Invoice Summary 2018 |
| DARL004044 | Denver Franchise Invoice Summary 2019 |
| DARL004045 | Denver Franchise Invoice Summary 2020 |
| DARL004046 | Milwaukee Franchise Invoice Summary 2017 |
| DARL004047 | Milwaukee Franchise Invoice Summary 2018 |
| DARL004048 | Milwaukee Franchise Invoice Summary 2019 |
| DARL004049 | Milwaukee Franchise Invoice Summary 2020 |
| DARL004050 | Minneapolis Franchise Invoice Summary 2017 |

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483 FAX: (702) 567-1568

| DARL004051 | Minneapolis Franchise Invoice Summary 2018 | |
| DARL004052 | Minneapolis Franchise Invoice Summary 2019 | |
| DARL004053 | Minneapolis Franchise Invoice Summary 2020 | |
| DARL004054 | Washington DC Franchise Invoice Summary 2017 | |
| DARL004055 | Washington DC Franchise Invoice Summary 2018 | |
| DARL004056 | Washington DC Franchise Invoice Summary 2019 | |
| DARL004261-DARL004502 | IJL Midwest Holdings Partnership Income Tax Return December 31, 2015 | |
| DARL004503-DARL004771 | IJL Midwest Holdings Partnership Income Tax Return December 31, 2016 | |
| DARL004772-DARL004982 | IJL Midwest Holdings Partnership Income Tax Return December 31, 2016 | |
| IJL 1-431 | Signed Franchise Agreements<br>- Milwaukee (signed 4/30/2004) pages 1-83<br>- Washington DC (signed 2/1/2006) pages 84-163<br>- Minneapolis (signed 2/27/2006) pages 164-228<br>- Chicago (signed 6/2/2005) pages 229-304<br>- Cleveland (signed 12/1/2005) pages 305-368<br>- Denver (signed 5/25/2006) pages 269-432 | |
| IJL 474-474 | Correspondence to John Holland re amended notices of default relating to franchise agreements | |
| IJL 482-488 | Correspondence to Jeffrey Zucker re amended notices of default relating to franchise agreements | |
| IJL 1228-1263 | IJL Midwest Chicago P&L Jan-July 2018 | |
| IJL 1264-1335 | IJL Midwest Denver P&L Jan. 2019 | |
| IJL 1336-1407 | IJL Midwest Holdings P&L Jan. 2020 | |

(a)    As to the following exhibits, the party against whom the same will be offered objects to their admission on the grounds stated:

1.    Set forth the plaintiff's exhibits and objections to them.

•    Plaintiff's Exhibit: Better Business Bureau "Torch Award" Nomination Plaque received by IJL Minneapolis.  Defendant objects to the Better Business Bureau "Torch Award" on the grounds of relevance and hearsay.

•    Plaintiff's Exhibit: Jeff Zucker Email to John Holland dated October 20, 2020 with feedback on IJL DC renewal request. Defendant objects to the Jeff Zucker Email to John Holland dated October 20, 2020 on the grounds it is not

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX:  (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

relevant to the case as pled and is mooted by the parties' stipulation that IJL would not take steps to non-renew or otherwise terminate the Franchise Agreements pending trial in this action.

Plaintiff's Exhibits: Notices of Renewal for Franchises Expiring in mid-2023. Defendant objects to these Franchise Agreement renewal notices on the grounds they are not relevant to the case as pled and they are mooted by the parties' stipulation that IJL would not take steps to non-renew or otherwise terminate the Franchise Agreements pending trial in this action.

2.  Set forth the defendant's exhibits and objections to them. N.A.

(b)  Electronic evidence: [State whether the parties intend to present electronic evidence for purposes of jury deliberations.]  Not at this time.

(d) Depositions:

1.  Plaintiff will offer the following depositions: [*Indicate name of deponent and identify portions to be offered by pages and lines and the party or parties against whom offered.*]

i.  *Deposition of Defendant IJL CEO Melissa Brown – to be offered against Defendant IJL*: *6:2-5* (Brown oversees all aspects of Defendant IJL's day-to-day operations); *7:1-21* (acknowledging receipt of Darling's notice of renewal for Milwaukee); *8:7-24* (acknowledging that IJL allowed more than 90 days to pass without responding to Darling's notice of renewal for Milwaukee); *13:16-16:22* (IJL has neither invoiced franchisees for any alleged fee deficiency, nor provided an opportunity to cure any alleged fee deficiency); *20-41:8* (noting the only remaining franchisee-owned locations in the system, not including Plaintiffs' locations, are Houston and San Francisco); *21:3-9* (acknowledging franchisees did not draft the underlying Franchise Agreements); *21:22–30:12* (acknowledging that IJL has not exercised its right to collect any alleged fee deficiency balance under § 3(C) of the Franchise Agreement); *32:13-33:19* (acknowledging that Defendant IJL could have resolved the alleged deficiency balance of $39,018 calculated by Defendant IJL's expert to be allegedly owed by IJL Milwaukee by initiating an ACH payment transaction); *34:2-5* (Defendant IJL is unwilling to specify a date on which Defendant IJL would like to collect ACH payment of $39,018); *38:3-40:18 and 56:14-57:4*

(acknowledging that, subsequent to the franchise system purchase by The Riverside Company, Defendant IJL has closed, terminated, "purchased," or non-renewed former franchisee-owned and operated locations in Albany, Albuquerque, Atlanta, Austin, Birmingham, Boise, Brisbane, Calgary, Charleston, Charlotte, Cincinnati, Columbus, Dallas, Detroit Suburbs, Dublin, Edmonton, Ft. Myers, Harrisburg, Hartford, Jacksonville, Kansas City, Las Vegas, Los Angeles, Louisville, Melbourne, Naples, Nashville, New Orleans/Baton Rouge, New York City, Norfolk-Hampton Roads, Omaha, Orange County, Philadelphia, Philadelphia/Suburbs, Phoenix, Pittsburgh, Portland, Raleigh-Durham, Reno, Sacramento, San Diego, Sarasota, Seattle, South Carolina, St. Louis, Sydney, Tampa, Toronto, Vancouver, and Western New York); *41:9-11* (Defendant IJL, now, directly operates 45 locations across the U.S. as corporate store locations); *41:12-20* (acknowledging that Defendant IJL has not created a Uniform Offering Circular or a Franchise Disclosure Document since 2007); *41:21-23, 42:4-16, and 43:12-20* (noting that Defendant IJL has not sold a new franchise since at least 2007 and cannot do so without creating a presale disclosure document); *44:12-24* (acknowledging that Defendant IJL has no plans to sell any more franchises and that she cannot recall the last time that IJL even considered selling a new franchise location); *64:3-7* (Brown has been with the franchisor, Defendant IJL, since 2004); *66:2-8* (the IJL franchise system does not use a Point-of-Sale system ("POS")) *73:11-15* (Defendant IJL does not use any reporting system that allows the franchisor to collect real-time information about customer payments being made to system franchisees); *74:9-17 and 77:4-10* (Brown is unaware of the possible benefits of using a POS system, like the possibility of collecting real-time information about customer payments); *75:1-9* (Defendant IJL has not considered the possibility of using a POS system for franchisees); *75:10-76:9* (Defendant IJL uses a reporting software platform called NetSuite for its corporate store locations but has not made that reporting platform software available to system franchisees); *77:1-3* (a franchisee cannot use the IJL App to run credit card payments by franchisees' customers); *81:20-82:15* (Defendant IJL's payment reporting system is not uniform because the corporate locations use a different reporting platform); *82:16-83:11* (Defendant IJL has not considered the possibility of having system franchisees use the same reporting platform that company-owned locations use); *85:18-22 and 86:1-9* (the IJL App created by the Defendant IJL does not have a data field that allows franchisees to enter recurring payments); *86:13-22* (Defendant IJL has not updated the operating manual that franchisees use since at least 2012); *86:23-87:12* (franchisees enter contracts into the IJL App system rather than processing payments received); *87:21-88:6* (Defendant IJL imposes and retains royalties paid even where franchisees' customers receive a refund of the customer's payment); *90:18-23* (Defendant IJL would simply calculate royalties based on contracts entered into the IJL App by system franchisees).

2.  Defendant will offer the following depositions:

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

•      Deposition of Lynn Poferl: 7:3-25 (education and experience background); 13:10-23 (initially, Midwest Parties charged clients flat fee); 19:3-23:18 (switched to monthly fees in addition to flat fees and admits to not accurately reporting those fees because she only estimated they would collect 80% and later just 70% of the monthly fees); 24:6-26:7 (Poferl admits she never told IJL that she could not report accurately through the IJL App); 35:7-36:21 (admits Midwest Parties' financial statements are accurate and that the management fee is not included in the financials); 37:9-38:19 (admits IJL App not designed for reporting revenue); 39:19-45:23 (claims that she did not confirm the accuracy of the invoices from IJL); 33:25-34:14, 52:12-54:19 (admits that the Midwest Parties now report by submitting financial statements and pay Franchise Fees based on the "Sales" column on such financial statements).

•      Deposition of Sara Darling: 14:13-15:10 (admits Midwest Parties initially charged a flat fee); 16:1-22:11 (admits Midwest Parties switched from flat fee to monthly fees and initial fee); 40:7-44:3 (admits she never told IJL that the Midwest Parties could not report revenues accurately).

•      •      Deposition of Scott Hagel: 10:24-11:22 (admits the Midwest Parties have not paid the Franchise Fees due on the unreported amounts including the Franchise Fees that the Midwest Parties do not dispute they owe).

(e) Objections to depositions:

1.      Defendant objects to plaintiff's depositions as follows:

  None.

2      Plaintiffs object to defendant's depositions as follows:

Page 33 of 35

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483  FAX: (702) 567-1568

None.

VIII.

The following witnesses may be called by the parties at trial:

(a) Provide names and addresses of plaintiff's witnesses. Sara Darling, Lynn Poferl, Scott Evert, Scott Hagel, Rodney Oakes, Josiah Lamb, IJL's Melissa Brown and Rachel Wilson, and Joseph Lesovitz.  Plaintiff reserves the right to call other witnesses as the facts/claims develop.

(b) Provide names and addresses of defendant's witnesses.

Melissa Brown

Nancy Rubin

Rachel Wilson

Joseph Lesovitz

Sara Darling

Scott Hagel

Rodney E. Oakes, CPA, CFF

Josiah Lamb, CPA, CFE

Lynn Proferl

IX.

The attorneys or parties have met and jointly offer these three trial dates:

The Midwest Parties identified July 17, 2023; July 24, 2023; and July 31, 2023 as proposed trial dates both because: (a) the claims of franchisees other than IJL Milwaukee are not yet ripe for trial; and (b) realistically, there is a significant trial date backlog on the Master Calendar that suggests the case will not likely be tried in the near term.  However, IJL did not agree to jointly offer those July 2023 trial dates.

IJL would, instead, like the earliest trial date available.

It is expressly understood by the undersigned that the court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the court's calendar.

X.

It is estimated that the trial will take a total of 4 days.

APPROVED AS TO FORM AND CONTENT:

DADY & GARDNER, P.A.
By:____/s/ John D. Holland_____
John D. Holland (*Pro hac vice*)
5100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 359-3504


NAYLOR & BRASTER

By:_____/s/ Jennifer Braster_____
Jennifer Braster
Nevada Bar No. 9982
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
Telephone: (702) 420-7000

XI.

ACTION BY THE COURT

This case is set for court trial on the stacked calendar on November 14, 2022, at 9:00 a.m. in LV Courtroom 6C. Calendar call will be held on November 8, 2022, at 9:00 a.m. in Las Vegas Courtroom 6C..

IT IS SO ORDERED:

Dated:_____June 23, 2022_____

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

HOWARD & HOWARD ATTORNEYS, PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
(702) 257-1483 FAX: (702) 567-1568